IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION


**JOHNNY INGRAM,**

    **Plaintiff,**

**vs.**                                          **CASE NO. 1:04CV440-MMP/AK**

**JO ANNE B. BARNHART,**
**Commissioner of Social Security**

    **Defendant.**

    _____/

## REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) filed under Title II of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.**    **PROCEDURAL HISTORY**

Plaintiff filed an application for DIB on August 26, 2000, alleging a disability onset date of September 13, 1999, because of right ulnar neuropathy. Plaintiff petitioned for a hearing before an administrative law judge (ALJ), who conducted a hearing on January 17, 2003, and entered an unfavorable decision on February 11, 2003. The Appeals

Council denied Plaintiff's request for review on October 28, 2004, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

B.     **FINDINGS OF THE ALJ**

The ALJ found that the plaintiff's impairments of right ulnar neuropathy with radial capiteller arthritis, carpal tunnel release, and left elbow nerve compression are severe impairments, but that these impairments do not meet the Listings of Impairments. R. 16. The ALJ found the plaintiff retains the residual functional capacity to perform light work without the use of his right arm. R. 17.

The ALJ reviewed Dr. Sharkey's opinions from January 2001 and August 2000 to determine that his statements were inconsistent. R. 19. Based on the consensus of all medical opinions, the ALJ established that the plaintiff's pain complaints were disproportionate to the objective findings, and thus the plaintiff's pain statements are not credible. R. 20. The plaintiff's pain complaints were found inconsistent with his testimony regarding his daily activities and more consistent with light work duties. *Id.*

Th ALJ concluded the plaintiff can not perform any of his past relevant work. R. 21. He is able to perform a significant range of light or sedentary work. *Id.*

C.     **ISSUES PRESENTED**

Plaintiff argues that the ALJ failed to give proper weight to the treating physician's opinion, the ALJ committed error by rejecting the plaintiff's pain testimony, and the ALJ committed error by not finding the plaintiff disabled in light of the VE's testimony. Doc. 12.

**No. 1:04CV440-MMP/AK**

The government responds the ALJ properly found the plaintiff's pain testimony not credible because of information from doctors about pain exaggeration, the ALJ properly explained there was good cause for refusing to accept treating physician's assessments due to conflicting information, and the ALJ properly found that plaintiff retained the ability to perform a significant number of jobs. Doc. 14.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

## D.    STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence

**No. 1:04CV440-MMP/AK**

supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an adequate basis for it to determine whether proper legal principles have been observed requires reversal.  Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

    1.    Is the individual currently engaged in substantial gainful activity?

**No. 1:04CV440-MMP/AK**

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary.  Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work.  If Plaintiff establishes that his impairment keeps him from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

E. **SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY**

On January 14, 1999, Dr. Steven Reid performed a right ulnar nerve neuroplasty and transposition operation on the plaintiff due to cubital tunnel syndrome. R. 117.

**No. 1:04CV440-MMP/AK**

During a routine follow-up concerning the right hand and elbow with Dr. Reid on February 17, 1999, it was noted, "I am concerned that there may be psychosocial economic factors complicating Mr. Ingram's recovery." R. 114. Another follow-up was on April 7, 1999, and the plaintiff was slightly improving, though the doctor again noted "I am concerned that there may be psychosocial economic factors contributing to this patient's less than satisfactory recovery." R. 111. During another follow-up on March 8, 1999, Dr. Reid recommended the plaintiff continue hand therapy and remain on light duty work. R. 113.

The plaintiff saw Dr. Oscar De Paz on July 12, 1999, for pain and numbness in the right arm. R. 125. The plaintiff returned on July 19, 1999, for a follow-up and was working light duty and said pain was beginning in his left elbow. R. 124. On August 24, 1999, the plaintiff had electrophysiological studies done, showing severe right ulnar neuropathy status and compression neuropathy of the left ulnar nerve at the elbow.

On December 6, 1999 the plaintiff had explorative surgery of the right elbow performed by Dr. Rodger Powell for recurrent entrapment in the ulnar nerve of the right elbow. R. 167.

The plaintiff saw Dr. Arthur Sharkey on December 21, 1999 for a follow-up for the decompression of his ulnar nerve, reporting the pain and sensation as exactly the same as before the procedure. R. 137. The doctor noted "I am not sure I hold much hope for a recovery in this individual based on his responses to the initial postop visit." R. 137. On

**No. 1:04CV440-MMP/AK**

January 27, 2000 the plaintiff returned with "increased hypersensitivity along the medial right elbow and the forearm and hand." R. 136.

The plaintiff had a physical residual functional capacity assessment by Ed Holifield on February 9, 2000. R. 180. He was assessed as being able to occasionally lift 20 pounds, frequently lift ten pounds, and stand and sit for six hours. R. 174. The symptoms of pain and hypersensitivity were seen as credible and consistent with the objective findings. R. 178.

The plaintiff saw Dr. Sharkey on March 9, 2000, to have EMGs and nerve conduction studies, which showed he was decompressed across the elbow and compressed below the elbow. R. 135.

On August 4, 2000 the plaintiff saw Dr. Sharkey and was assessed with persistent ulnar neuropathy and carpal tunnel and Guyon canal syndrome. R. 132. It was noted that the plaintiff has "some symptom magnification." R. 133. During his follow-up with Dr. Sharkey, he noted they could not reach a decision about surgery and the plaintiff "became upset with me today when I pointed out the fact that we were going to send him back to light duty, and he had a discussion about how his major concern is his arm, and not light duty, and they do not let him do light duty when he goes back, anyway. He refused to shake my hand as he left, and I am not sure he will be a patient of mine any further..." R. 134.

A physical residual functional capacity assessment was done on September 12, 2000, by Thelma Whaka, SDM. R. 149. The assessment noted the plaintiff could

**No. 1:04CV440-MMP/AK**

occasionally lift up to 20 pounds, frequently lift ten pounds, stand six hours and sit six hours in an eight hour work day. R. 143. The plaintiff was suggested to be limited to light work. R. 147.

On November 15, 2000 the plaintiff had surgery by Dr. Sharkey for right carpel tunnel and Guyon's canal syndrome. R. 154. The plaintiff had follow-ups with Dr. Sharkey on November 22 and December 12, 2000, and was assessed as having nice improvement. R. 152-153.

In a letter from Bruce A. Mueller, he explained that his functional capacity evaluation was terminated prior to completion because of the plaintiff's "submaximal efforts and his symptom exaggeration." R. 206. The plaintiff refused to perform any lifting despite lifting over 30 pounds in a Static Strength Lift test. *Id*. It was recommended the plaintiff could at least work sedentary jobs. *Id.* During testing the plaintiff made "dramatic and pronounced" behaviors of shaking and grimacing. R. 207. When the plaintiff's grip strength was being measured he exhibited these behaviors and produced only 14 pounds of grip, while when performing the rapid exchange of grip he produced 25 pounds of grip with none of these behaviors. *Id*. The doctor suggested there was a non-organic component to his pain due to scoring 9/21 by a modified Korbon's protocol and passed only 12/38 validity criteria, which suggests submaximal effort not related to pain. These were "thought to represent a conscious effort to demonstrate a greater level of pain and disability than are actually present." *Id.*

**No. 1:04CV440-MMP/AK**

On March 27, 2001 Dr. Sharkey noted the plaintiff "has a significant pain syndrome associated with ulnar neuropathy," and "I believe he has plateaued from my management." R. 202. On December 5, 2001 Dr. Valentine saw the plaintiff and noted he "exhibited exaggerated pain behavior with very low pain tolerance." R. 193. On January 31, 2002, Dr. Valentine notes the plaintiff "really is rather terrified of needles." R. 192.

The plaintiff was seen by Dr. Mark Petty on April 15, 2002, and he noted the plaintiff "is going to continue having problems with pain in his elbow from his arthritis." R. 188. The doctor noted he could benefit from an ulnar nerve neurolysis, but it presents problems of nerve damage and scarring. R. 188.

Dr. Sharkey completed a clinical assessment of pain for the plaintiff, which said the plaintiff repeatedly reported pain to him and this pain was expected with the plaintiff's diagnosis. The pain was noted as both somatogenic and psychogenic, neuropathic and differentation. R. 262-263. The pain was continuous and chronic, and treated with medication. R. 263. The plaintiff was noted as suffering from "depression or anxiety" related to the pain, which was described as "marked pain." R. 264. No extreme restrictions were listed, only mild to marked. R. 266.

### F.   SUMMARY OF THE ADMINISTRATIVE HEARING

**No. 1:04CV440-MMP/AK**

The plaintiff testified he has not worked since September 13, 1999, and is a high school graduate. R. 31. He lives with his wife and four children. R. 32. He drives about two days a week, 30 to 40 minutes each time. R. 33.

He testified that before he worked light duty, he was a mixer driver for five years. R. 33. On this job he would lift 35 to 50 pounds. R. 35. Before the cement mixing job he was a garbage truck driver. R. 35. On this job he would lift up to 35 pounds. R. 36.

The plaintiff testified about the three surgeries on his right arm. R. 38. He explained that he wore a glove on his right hand due to sensitivity to the cold. R. 40. On an average day, the plaintiff testified the pain in his right arm is between 4 and 5 on a scale of ten, and up to ten sometimes. R. 41. The medication for the pain makes the plaintiff feel nauseated and relaxed and takes up to 20 minutes to set in and works for around an hour. R. 42.

The plaintiff said around his house he pulls the garbage cans to the street with his left arm, picks up sticks, and cooks meals. R. 45. He said he helps clean up, goes to church, and runs errands for the pastor. R. 46.

For the pain, he testified the doctors tried injections, medication and therapy. R. 48. He testified he tries to find work and applies for jobs but cannot get a response from employers. R. 49. The plaintiff testified he thought about going back to school. R. 50.

Vocational expert Frederick Collins testified that driving jobs were mostly medium work, and therefore if the plaintiff was limited to less than medium work he could not return to his past jobs. R. 51-52. Examples of light jobs requiring occasional reaching

**No. 1:04CV440-MMP/AK**

would be jobs like security guard, parking lot attendant, information clerk, ushers, sales jobs, counter rental clerk, and storage facility rental clerk. R. 52-53. He also gave numerical figures for these jobs in Florida and the United States. R. 53.

When given a hypothetical similar to the plaintiff's situation, Collins suggested jobs of food and beverage order clerk, telephone answering service operator, receptionist, telephone solicitor, and taxicab dispatcher. R. 54-55. When asked about jobs where the employee would be given ten minute breaks for each hour, Collins testified that an employee requiring such breaks could not maintain these jobs. R. 55.

**G.     DISCUSSION**

    a)     Treating Physician's Opinion

If a treating physician's opinion on the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight. 20 C.F.R. § 404.1527(d)(2).  Nevertheless, the ALJ may discount the treating physician's opinion if good cause exists to do so. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986).  Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supports a contrary finding," the opinion is "conclusory" or "so brief and conclusory that it lacks persuasive weight," the opinion is "inconsistent with [the treating physician's] own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not

**No. 1:04CV440-MMP/AK**

accompanied by objective medical evidence." Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583 (11th Cir. 1991), (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  If an ALJ rejects a treating physician's opinion, he must give explicit, adequate reasons for so doing, and failure to do so results in the opinion being deemed accepted as true as a matter of law. MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986); Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992).

The treatment notes of Dr. Sharkey do not support his later assessments completed on January 9 and 10, 2003, where he apparently attributes a severe mental component markedly affecting Plaintiff's ability to work.  See R. 285-288, 262-266.  Dr. Sharkey had earlier expressed his opinion that Plaintiff was exaggerating his complaints of pain and his opinion that Plaintiff could return to work.  Dr. Sharkey failed to explain the stark difference in his opinions or what he based the severe mental limitation he referred to in his later assessments.  With no objective testing to support the finding regarding Plaintiff's mental condition, it is safe to presume that the finding was based on Plaintiff's self-reports, which the ALJ had discredited.  Thus, the ALJ cited substantial reasons for rejecting the opinion of Dr. Sharkey, as set forth in the functional assessments.

      b)    <u>Credibility of Plaintiff's testimony regarding pain levels</u>

**No. 1:04CV440-MMP/AK**

Pain and other subjective symptoms are treated by the regulations as symptoms of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, "unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." Accord 20 C.F.R. § 416.929. In Hand v. Heckler, 761 F.2d 1545, 1549 (11th Cir. 1986), the Eleventh Circuit adopted the following pain standard:

> There must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from the condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

The Eleventh Circuit continues to follow the Hand test. Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1216 (11th Cir. 1991); Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991); Martin v. Railroad Retirement Bd., 935 F.2d 230, 233 (11th Cir. 1991). "While both the regulations and the Hand standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." Elam, 921 F.2d at 1216. The court has held that "[p]ain alone can be disabling, even when its existence is unsupported by objective evidence." Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992), citing Walker v. Bowen, 826 F.2d 996, 1003 (11th Cir. 1987). Standing alone, however, a claimant's testimony of pain is not conclusive evidence of disability. Macia v. Bowen, 829 F.2d 1009, 1011 (11th Cir. 1987). If the Commissioner rejects a claimant's allegations of pain, he must articulate explicit and adequate reasons, and these reasons must be based on substantial evidence. Hale v. Bowen, 831 F.2d 1007, 1012 (11th Cir. 1987). The failure to articulate adequate reasons for discrediting pain testimony mandates that the testimony be accepted as true as a matter of law. Cannon v. Bowen, 858 F.2d 1541, 1545 (11th Cir. 1988).

**No. 1:04CV440-MMP/AK**

While Plaintiff disagrees with the adequacy of the ALJ's reasons for finding his pain testimony less than credible, for purposes of this review the Court finds that the ALJ's determination is supported by substantial evidence and it declines to second guess the ALJ's credibility finding.  See Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995); MacGregor v. Bowen, 786 F.2d 1050, 1054 (11th Cir. 1986); Sellers v. Barnhart, 246 F.Supp. 2d 1201, 1213 (M.D. Ala. 2002) (evidence of malingering constitutes substantial evidence to support ALJ's credibility finding).  Three doctors, Drs. Sharkey, Valentine, and Reid, and one vocational counselor, Bruce Muelller, found Plaintiff to be exaggerating his pain and limitation.  Mueller's testing, which included a credibility factor, found Plaintiff scored very low on the validity scale such that his effort was deemed very poor and "thought to represent a conscious effort to demonstrate a greater level of pain and disability than are actually present."  R. 207.  Plaintiff's argument that it is error for the ALJ to rely on Mueller, who is not a medical source, is not well taken since the ALJ is not relying on Mueller for his opinion concerning the existence of an impairment, rather as evidence of its severity or lack thereof.  See 20 CFR §404.1513(d) (use of "other sources" may be used to show the severity of an impairment and how it affects a person's ability to work).  Even if the ALJ did not consider this other source, there were three medical doctors who made similar findings. Thus, the ALJ articulated explicit and adequate reasons for discrediting Plaintiff's testimony about his pain and limitation.  There is no merit to this argument.

      c)      <u>Vocational expert testimony</u>

Plaintiff argues that the ALJ should have adopted the opinion of the vocational expert that if Plaintiff required ten minute breaks each hour no employer would hire him. However, there is no medical evidence in the record to support Plaintiff's contention that he required such frequent breaks every hour.

At the fifth step of the evaluation process, the ALJ must determine whether a Claimant, based on his residual functional capacity, age, education and work experience, can adjust to other work in the national economy.  20 C.F.R. §

**No. 1:04CV440-MMP/AK**

404.1520(a)(4).  The ALJ may make this determination by reliance upon the Medical Vocational Guidelines or by utilizing the services of a vocational expert.  Phillips v. Barnhart, 357 F.3d 1232, 1239 (11th Cir. 2004).  Because the ALJ found that Plaintiff's use of his right arm was limited, thereby precluding a full range of employment at the light level, eh was required to use vocational testimony to make this fifth step determination.  Foote v. Chater, 67 F.3d 1553, 1558 (11th Cir. 1995).  "It is only when the claimant can clearly do unlimited types of  work . . . that it is unnecessary to call a vocational expert to establish whether the claimant can perform work which exists in the national economy."  Allen v. Sullivan, 880 F.2d 1200, 1202 (11th Cir. 1989) (citation omitted).  Exclusive reliance upon the grids is not appropriate when claimant has a nonexertional impairment that significantly limits his basic work activities.  Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When the ALJ uses a vocational expert, he elicits responses from the expert by posing hypothetical questions to him or her.  Phillips, 357 F.3d at 1240.  In order for the expert's testimony to constitute substantial evidence to support the ALJ's findings with regard to this point, the ALJ must pose a hypothetical which includes all of Claimant's impairments.  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999).  The ALJ is only required to pose those limitations he finds severe in the hypothetical to the expert. Pendley v. Heckler, 767 F.2d 1561, 1563 (11th Cir. 1985).  The ALJ specifically declined to accept the severe limitations found in Dr. Sharkey's functional assessment and no other medical source suggested that he needed longer or more frequent breaks during a normal work day.  Thus, there was substantial evidence to support the ALJ's finding that this was not a severe limitation such as to present it to the vocational expert and accept his opinion on its affect on Plaintiff's ability to work.

**No. 1:04CV440-MMP/AK**

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this **20th** day of June, 2006.

          s/ A. KORNBLUM
          **ALLAN KORNBLUM**
          **UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 1:04CV440-MMP/AK**